**Gregg M. BEMIS, Plaintiff, Appellant,**

v.

**William H. KELLEY, Jr., etc., et al., Defendants, Appellees.**

No. 87–2023.

United States Court of Appeals, First Circuit.

Heard April 8, 1988.

Decided Sept. 16, 1988.

appellees William H. Kelley, Jr. and Daniel H. Donovan.

Andrew S. Hogeland, Asst. U.S. Atty., and Frank L. McNamara, Jr., U.S. Atty., Boston, Mass., on brief for appellees Wayne Miller and James Karolides.

Michael R. Fuller and Gallagher & Gallagher, P.C., Boston, Mass., on brief for appellee Auto Service and Tire, Inc.

Before CAMPBELL, Chief Judge, BOWNES and TORRUELLA, Circuit Judges.

PER CURIAM.

The appellant, Gregg M. Bemis, has appealed a district court order dismissing his complaint, filed pursuant to 42 U.S.C. § 1983, against two Boston police detectives, two agents of the United States Treasury, Bureau of Alcohol, Tobacco and Firearms (ATF), and a Mattapan, Massachusetts towing company. We affirm.

The district court's memorandum and order sets out in detail the factual background and the reasoning supporting the dismissal of each of the seven counts in the complaint. That memorandum and order can be found at *Bemis v. Kelley*, 671 F.Supp. 837 (D.Mass.1987). We see no reason to restate those details here and refer to them only as necessary in addressing Bemis' arguments on appeal.

Bemis contends that he was "entitled" to appointment of counsel due to, in the appellant's view, the complexity of the issues raised, his inability to obtain documents in support of his claim and his lack of knowledge of the law. "[T]here is no constitutional right to appointment of counsel in a civil case." *Cookish v. Cunningham*, 787 F.2d 1, 2 (1st Cir.1986). "An indigent litigant must demonstrate exceptional circumstances in his or her case to justify the appointment of counsel." *Id.* "Some factors which courts have found to bear on the question of exceptional circumstances in a particular case include the indigent's ability to conduct whatever factual investigation is necessary to support his or her claim [citation omitted]; the complexity of the factual and legal issues in-

Gregg M. Bemis on brief pro se.

John P. Roache, Asst. Corp. Counsel, City of Boston Law Dept., on brief for

volved [citation omitted]; and the capability of the indigent litigant to present the case." *Id.* at 3.

Bemis first moved for appointment of counsel in the district court shortly after filing his complaint and receiving in forma pauperis status. The court denied the motion, with the notation, "The claim is clearly stated." Bemis next moved for appointment of counsel after having received a request for production of documents from the defendant police detectives. In addition to stating that several issues raised by the request were beyond his expertise, and that he was unable to obtain some of the documents requested due to his incarceration outside the State of Massachusetts and his participation in the "U.S. Marshals Witness Protection Program," Bemis alleged difficulty in framing his own interrogatories to submit to the defendants. The district court denied the motion, stating, "The request is for the production of certain documents, which, if they exist, can be produced by the plaintiff without the assistance of counsel. As for interrogatories, they can also be framed in plain language." Bemis then moved for reconsideration of the issue of appointment of counsel. The court denied reconsideration, noting that "[t]he plaintiff has clearly stated the allegations supporting his claim and displayed an understanding of the issues. I am without authority to appoint counsel in this private matter." Finally, after the entry of the order of dismissal, Bemis filed a motion for reconsideration and again sought the appointment of counsel. The court denied the motion stating, "This basis upon which the plaintiff seeks reconsideration have [sic] been addressed in my earlier memorandum and will not be repeated here and I decline to appoint counsel for reasons previously stated as well."

We review the denial of appointment of counsel to an indigent litigant in a civil case only to determine whether the district court abused its discretion. *Cookish v. Cunningham,* 787 F.2d at 2. We find no abuse of discretion here. Bemis, who had been employed as a police officer with the Boston Housing Authority, demonstrated through his filings in the district court a familiarity with, and workable knowledge of, the legal process and its rules. We agree with the district court that Bemis' allegations were clearly stated and demonstrated an understanding of the issues. The facts and legal issues were not excessively complex.

On appeal, Bemis contends he was unfairly handicapped with respect to discovery by the lack of counsel. He concedes that Counts I and II as framed, *see Bemis v. Kelley,* 671 F.Supp. at 841–42, were properly dismissed. He contends, however, that if he had had counsel, the lack of a basis for these counts would have been revealed sooner. An attorney, Bemis argues, would have obtained discovery sooner and then Bemis could have amended Count I from an allegation of a lack of a search warrant (which allegation was subsequently revealed as incorrect) to an allegation of lack of authority to continue the impoundment of his car after the charges of motor vehicle larceny and larceny of motor vehicle parts were dismissed. Similarly, Bemis argues, he could have amended Count II from an allegation of an unconstitutional seizure of his handgun and his firearms license to an unconstitutional continued possession of these items after dismissal of the state charges.

Assuming that a substantiated impairment of a litigant's ability to conduct discovery might warrant appointment of counsel, Bemis' contentions fail to support his allegations of prejudice. We are at a loss to understand how an earlier revelation of the inadequacy of Counts I and II would have helped Bemis. Both Counts I and II, as Bemis concedes, were properly dismissed. Bemis' suggestion that an earlier revelation, which he presumes would have occurred if an attorney had been litigating on his behalf, would have permitted the amendments he now advances is unavailing. Aside from his unsupported assumption that counsel would have obtained discovery sooner, the "amendments" he suggests he would have sought appear to be attempts at substantial transformations of these counts into wholly different allegations. These "amendments" would not

have saved the allegations originally filed. Moreover, Bemis did present, in his opposition to the motion for summary judgment filed by the defendant police detectives, this theory (which he now suggests he would have offered as amendments if he had had counsel) that is, that his property was unlawfully withheld after the dismissal of the state charges. Bemis' argument that he was handicapped in the presentation of his case to the district court because of the lack of appointed counsel is simply contrary to the record.

■ Bemis next argues that the district court erred in dismissing his complaint because, according to the appellant, he stated claims which entitled him to relief. This blanket statement is enlarged upon only with reference to Counts III (unlawful restraint) and IV (harassment and denial of access to the courts), see *id.* at 842. Even so, those arguments are essentially a restatement of arguments presented to the district court and they do not persuade us of error.

Bemis also contends that the district court abused its discretion in denying his motions to compel discovery. The record indicates that Bemis filed five motions to compel. It also appears that the defendant police detectives answered two sets of interrogatories before moving for a protective order against having to answer Bemis' third set of interrogatories. The detectives claimed the third set were interrogatories which could have been propounded in either of the first two sets, and evidenced the use of interrogatories as a means to annoy or cause undue burden and expense. The defendant ATF agents state that they answered one set of interrogatories and two sets of requests for production of documents before moving for a protective order against further discovery. It also appears that the defendant towing company answered at least one set of interrogatories.

Bemis argues that in each of his motions to compel, "he sought to compel disclosure of documents or other evidence which would have adequately supported his causes of action." Brief at p. 14. Except as to one example, he provides no specifics as to particular documents. We therefore deem waived any argument as to other documents. The one example he cites is a tape recording, apparently of an interview the ATF agents had with Bemis on February 10, 1984. The ATF agents referred to this tape recording in response to Bemis' first request for production of documents: "There also exists a cassette recording of an interview with plaintiff dated 2/10/84, which can be copied if plaintiff submits a request to the undersigned [the agents' attorney]." (Record Item No. 34, Exhibit A.) Whether a distinct request to copy the tape recording was made is not clear. The next mention of this tape in the record appears in the agents' response to Bemis' second request for production of documents when the agents, who were sued only in their individual capacities, "object[ed] to the production of this tape on the ground that it is not in their custody or control as individuals," and that the tape recording is the property of the ATF Bureau. (Appendix to ATF agents' brief at pp. 45–46.) The district court entered an order stating, "Motion [to compel] denied, noting defendants' opposition filed April 6, 1987." On appeal, Bemis contends that, the agents' subsequent argument of lack of custody or control notwithstanding, the ATF agents had "provided photographs and transcripts of tape recordings [1] which also did not belong to them personally." Reply brief at 2.

We need not address whether agents sued as individuals can be compelled to produce documents allegedly the property of their employer agency and not within their custody or control. Even as to this one example of a particular document to

---

1. Bemis does not elaborate as to what "transcripts of tape recordings" were provided. In concluding that the district court did not abuse its discretion in denying Bemis' motion to compel, we have assumed that Bemis was not provided a transcript of the interview of February 10, 1984. If, in fact, Bemis had a copy of such a transcript, *a fortiori,* there was no abuse of discretion in declining to compel the ATF agents to produce the actual tape recording when Bemis raised no argument as to any inadequacy of a transcript.

which Bemis contends he was improperly denied discovery, Bemis tells us nothing of its content (he was obviously aware of the contents of a tape recording of his own interview) and provides only a conclusory statement that it "would have supported [his] third cause of action that he was being unlawfully restrained." Brief at 15. Bemis' reference to this tape recording was even less enlightening in the district court since he never pointed out to the district court the relevance of this tape recording to any particular count in his complaint. In his reply brief on appeal, Bemis suggests that the tape recording would have supported his contention that "he was not physically arrested on February 9, 1984 at 11:46 p.m., but rather on February 10, 1984 at 3:07 a.m. after he refused to cooperate with the investigation being conducted by defendants Miller and Karolides [the ATF agents]." Reply brief at 3.

■ Bemis' argument on appeal fails to persuade us that the district court abused its discretion in denying his motion to compel the production of the tape recording. *Smith & Wesson v. United States*, 782 F.2d 1074, 1082 (1st Cir.1986) (control of discovery is within discretion of trial court). Although he had the opportunity and ability to do so, Bemis never informed the district court of the particular relevance of the tape recording to his complaint. Moreover, the argument he belatedly raises in his reply brief appears unavailing in any event. The Boston Police Department "Arrest Booking Sheet" notes that Bemis was arrested at 11:46 p.m., booked at 3:04 a.m., and informed of his rights at 3:07 a.m. Bemis contends that he was not "physically arrested" until 3:07 a.m. Bemis does not explain what he means by "physically arrested." Bemis was obviously arrested, *i.e.*, restrained, at 11:46 p.m. The district court found, and we agree, that the arrest was pursuant to probable cause. *Bemis v. Kelley*, 671 F.Supp. at 842. That Bemis was not officially charged until after he allegedly refused to cooperate with the investigation being conducted by the ATF agents does not transform a lawful restraint into an unlawful restraint.

■ We find no merit in Bemis' contention that the district court's grant of motions to compel filed by the defendant police detectives and the defendant towing company placed an undue financial burden upon him. The district court granted the detectives' motion for an order compelling Bemis to produce certain documents and allow them to inspect and copy those documents "at the expense of the defendants and under arrangements which will ensure that the documents will not be lost or destroyed while being copied." (Record Item No. 28.) Bemis complains that although the defendant detectives stated that they would provide the other parties with copies of the documents inspected, the defendant towing company subsequently moved for an order to compel him to produce the same documents. Nonetheless, there was no undue financial burden placed on Bemis as a result. The district court allowed the towing company's motion with "the defendant to bear the expense as ordered previously." (Record Item No. 48.) We also note that the defendant towing company states on appeal that Bemis, in any event, never, in fact, produced the documents.

Finally, Bemis contends that the district court was incorrect as to the date of his incarceration, which date the district court had used as a factor to support its rationale for dismissal. We elaborate.

■ Count V, as the district court determined, essentially was a claim for damages for a broken windshield, a broken automatic transmission, a paint job damaged by dogs, and missing or damaged tools, firecoat, fire helmet, boots, and leather jacket. *Bemis v. Kelley*, 671 F.Supp. at 843. The court concluded that the appellant's property right asserted in this claim, however, was not of constitutional proportion. *Id.* The court gave three reasons to support its conclusion.

"First, the car was already in the exclusive and valid possession of the defendant, Auto Tire and Service. Second, there are no factual allegations supporting the claim of intentional—as opposed to negligent—taking of property; the

plaintiff's bald allegations are unsubstantiated. Third, the plaintiff was not in custody, or under restraint of any kind. His failure to take action between August 8, 1984 and October 5, 1984 is inexplicable. These facts warrant the approach taken by the Supreme Court in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). *See also Bonner v. Coughlin*, 517 F.2d 1311 (7th Cir.1975), modified *en banc*, 545 F.2d 565 (1976), *cert. denied*, 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529 (1978)." *Id.*

The district court also subsequently stated:

"One further note is in order. All of the events which form the bases of this complaint occurred before the plaintiff was sentenced on the federal charges on October 5, 1984. The plaintiff had ample time to seek remedies in the state courts for property losses he alleged he suffered. He then waited for almost two years after his sentence was imposed to bring this action. In other words, the plaintiff was not subjected to an intentional destruction of his property while he was in custody and unable to assert effectively his rights." *Id.* at 844.

Bemis argues that, contrary to the district court's understanding, he was incarcerated not as of October 5, 1984 when sentenced on the federal arson charges, but rather was incarcerated as of July 24, 1984 [2] when indicted and held without bail on those charges. Therefore, Bemis argues, his failure to take action between August 8, 1984 (the date his car was released to his brother-in-law) and October 5, 1984 (the date he was sentenced on the federal charges) was not, as the district court characterized it, "inexplicable," but rather because, Bemis contends, he was not in a position to take appropriate action. He asserts that he was not "fully aware" of the damage and/or losses "until a later date" after his car had been released. Moreover, he contends that he was cooperating with federal officials in their arson investigation and was "advised" by them that "his concerns would be taken care of and that he would get all of his property back."

We do not find that the district court's apparent misapprehension of the date of Bemis' incarceration warrants reversing its dismissal of either the complaint in its entirety, or Count V in particular. First, the dismissal was not based solely on the district court's (mis)understanding of Bemis' custodial status. The court also pointed out, correctly, we add, that there were no factual allegations supporting his claim of intentional taking of property, *i.e.*, his bald allegations were unsubstantiated. Second, in any event, the district court correctly concluded that the property right asserted did not rise to federal constitutional proportions.[3] *Hudson v. Palmer*, 468 U.S. 517, 536, 104 S.Ct. 3194, 3205, 82 L.Ed.2d 393 (1984) (intentional deprivation of property does not violate Due Process Clause if state provides adequate post-deprivation remedy); *see also Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (negligent acts by state officials, though causing loss of or injury to life, liberty or property, are not actionable under the Due Process Clause). There is nothing to suggest that Massachusetts does not provide an adequate remedy for the property losses alleged. Bemis' contention that he did not become "fully aware" of his property losses until some undefined point in time after his incarceration or his unsupported and vague allegation of reliance on statements by federal authorities that "his concerns would be taken care of" does not persuade us otherwise.

AFFIRMED.

---

**2.** This date of incarceration was asserted in paragraph 11 of Bemis' affidavit in support of his motion for summary judgment submitted to the district court.

**3.** We also note that an additional essential element for a successful § 1983 claim is a demonstration that the defendants acted under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980). We express no view as to whether this element was satisfied.